STADIUM REALTY CORPORATION *v.* DILL ET AL.

[No. 29,141. Filed June 8, 1954.]

*Frank A. Symmes, Charles W. Symmes* and *Owen S. Boling,* all of Indianapolis, for appellant.

*Walter Myers, Jr.,* of Indianapolis, for appellees.

EMMERT, J.—This is an appeal from an interlocutory order appointing a receiver to take charge of and collect the rents and profits of appellant's real estate pending an action brought by appellees Dill, Fields and Higgins upon a note and to foreclose a second mortgage on said real estate.

Appellant, by its articles of incorporation, was specifically authorized to borrow money and to execute real estate mortgages to secure the same. On November 28, 1949, appellant, hereafter referred to as Stadium Realty, borrowed from the Massachusetts Mutual Life Insurance Company of Massachusetts the sum of $150,000 and executed a first mortgage to secure the

same. This mortgage has not been in default at any time.

The appellees, E. Millard Dill, Clifford O. Fields, and Herbert E. Higgins, were partners doing business as Dill Implement Company, hereafter referred to as the partnership, and on July 16, 1952, the partners loaned Stadium Realty the sum of $60,000, evidenced by promissory note and secured by second mortgage on the real estate of Stadium Realty. Thereafter Stadium Realty loaned Clarence H. Eberhard, doing business as Dill Implement and Equipment Company, the sum of $60,000, and with the proceeds of this loan, Eberhard paid the partners $50,000 for sale of the partnership assets to Eberhard. At all times herein mentioned, Eberhard was a director and the president of Stadium Realty. The note and mortgage to the partnership became in default. Dill knew at the time the loan was made that Stadium Realty proposed to loan Eberhard the $60,000 so borrowed, and that Eberhard was going to use $50,000 thereof to buy the business of the partnership.

Stadium Realty contends that the loan by it to its president and director, Eberhard, was ultra vires and therefore void, which prevents the partners from recovering on their note and foreclosing the second mortgage, and that therefore there was no reasonable probability that the mortgagees could recover in their action, which made it error for the court to appoint a receiver pending the action.

The mere fact that the second mortgage contained an agreement for the appointment of a receiver in event of a default does not dispense with the necessity of showing some equitable ground for the appointment of a receiver. *Federal Land Bank of Louisville* v. *Schleeter* (1934), 208 Ind. 9, 17, 193

N. E. 378. "It is elementary that a receiver should not be appointed until the plaintiff makes proof to the satisfaction of the court that there is at least a probability that he will ultimately be entitled to a judgment or decree. High on Receivers (4th Ed.), §8, p. 14; 53 C. J., §13, p. 28." *Hawkins* v. *Aldridge* (1937), 211 Ind. 332, 338, 7 N. E. 2d 34, 109 A. L. R. 1205. See also *Indianapolis Dairymen's Co-op.* v. *Bottema* (1948), 226 Ind. 237, 79 N. E. 2d 399, and authorities therein cited. These well settled rules make it necessary to consider the effect of the loan by Stadium Realty to its president.

There is much conflicting language in the opinions deciding the effect of ultra vires contracts, and the general language in the authorities must be limited to the specific facts of each case. It would be futile to attempt to harmonize or rationalize all that has been written on the subject in the Indiana cases, since each case must stand of necessity upon its own facts. However, the defense of ultra vires is not favored by the courts. *Seamless, etc. Mfg. Co.* v. *Monroe* (1914), 57 Ind. App. 136, 106 N. E. 538.

Section 25-212, Burns' 1948 Replacement (Acts 1929, ch. 215, §13, p. 725), forbids loans by a corporation to its officers by the following language: "No corporation shall make any advancement on account of services to be performed in the future or shall make any loan of money or property to any officer or director of the corporation."[1] The purpose of this provision of the statute is to protect corporations, their stockholders and creditors. *Bowditch* v. *New England Life Ins. Co.* (1886), 141 Mass. 292, 4 N. E.

---

1. At common law a loan by a corporation to its officer was not *mala in se*. If the transaction was fair, which the officer had the burden of proving, it was not otherwise invalid. 3 Fletcher, Cyc. Corp. (Perm. Ed.) §955; 14A C. J. 111.

798, 55 Am. Rep. 474; *Lester* v. *Howard Bank* (1871), 33 Md. 558, 3 Am. Rep. 211; *Brittan* v. *Oakland Bank of Savings* (1889), 124 Cal. 282, 291, 57 Pac. 84, 71 Am. St. Rep. 58; *Savings Bank* v. *Burns* (1894), 104 Cal. 473, 38 Pac. 102. These cases hold that if a loan has been executed to an officer, the corporation is not precluded from suing to recover the loan. To prevent recovery would be to defeat the very purpose of the statute.[2]

The mere knowledge that the lender knew that the borrowing corporation was going to use the money in an ultra vires transaction does not make the loan void. *Wright* v. *Hughes* (1889), 119 Ind. 324, 331, 21 N. E. 907, 12 Am. St. Rep. 412. Appellant does not contend that a crime was committed, nor should we hold that the partnership must lose its loan because some of the proceeds were used to buy the partnership assets. Eberhard, doing business as Dill Implement and Supply, cannot avoid his liability to Stadium Realty on the ground that the transaction is ultra vires. Stadium Realty has a right of action to collect the loan from its president. This being true, it would be a gross injustice to permit Stadium Realty to avoid its contracts with the partnership Dill Implement Company. Stadium Realty seeks to keep what it obtained, and without making any restitution, rescind its note and mortgage. No statute prohibited the execution of this note and second mortgage. There was

2. "In some cases where a refusal to enforce an agreement would produce the very effect which the law seeks to guard against, a corporation is allowed to enforce it, although it was particularly prohibited and made illegal. Thus, for the security of depositors and others, banks are prohibited from entering into certain kinds of loans or purchases. When a transaction of this sort has been entered into, however, should the corporation be refused a right of recovery the result would be the impairment of the assets of the bank—the very result which the law seeks to prevent, and, therefore, the bank is allowed to recover." 5 Williston, Contracts (Rev. Ed.) §1632, p. 4573.

no evidence that the partnership defrauded Eberhard by the sale to him, or that it was made upon any inadequate consideration. The partnership was not a party to the contract between Stadium Realty and its president. We therefore conclude that Stadium Realty cannot defeat the action on the note and mortgage under the facts in this record.

Stadium Realty was renting the property for $5,000 a year less than the fair rental value thereof. Its note to Dill Implement Company was in default, and we do not believe the trial court abused its discretion in appointing a receiver to collect the rents and profits pending the action.

The order appointing a receiver is affirmed. In view of the emergency nature of the proceedings, the Clerk is ordered to transmit our mandate forthwith.

Flanagan, C. J., Gilkison, Bobbitt and Draper, JJ., concur.

NOTE.—Reported in 119 N. E. 2d 893.