78 N.J. Super. 108 (1962)
187 A.2d 624
YORK MOTEL ASSOCIATES, PALISADES MOTOR LODGE ASSOCIATES, TOLLGATE MOTEL ASSOCIATES, LIMITED PARTNERSHIPS, AND SIDNEY SPIELVOGEL, PLAINTIFFS,
v.
ELIZABETH BLUM, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JACOB BLUM, AND DANIEL BLUM, INDIVIDUALLY AND TRADING AS J.E. & D. BLUM, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 30, 1962.
*110 Mr. Isadore Glauberman for plaintiffs.
Mr. Sydney I. Turtz for defendants.
PASHMAN, J.S.C.
This is the continued return date of a motion by the defendant Daniel Blum for alternative relief based upon his contractual rights as a mortgagee. Stated simply, the question which the court is asked to decide is whether the defendant has the right to have a receiver of rents, issues and profits appointed without first instituting a plenary action to foreclose, or taking some similar affirmative action.
To put the subject matter of this motion in a proper perspective it is necessary, initially, to recite the nature of the instant case. Plaintiffs York Motel Associates, Palisades Motel Associates and Tollgate Motor Lodge instituted this action on December 16, 1961 in two counts against defendants Elizabeth Blum, et al. The gravamen of both counts was that defendant Daniel Blum agreed orally to modify the existing contractual obligations of York and Palisades if certain admitted defaults were cured by an agreed date. Plaintiffs sought ad interim and final injunctive relief together with a declaration that the purported modifications were valid and enforceable. The court, after considering the verified complaint of the plaintiffs, several affidavits, oral argument and extensive legal memoranda, granted a preliminary injunction to preserve the subject matter of the litigation and protect the status quo. The injunction prohibited the defendants from interfering with the plaintiffs' possession of the motels but gave the defendants leave to counterclaim, in *111 the main action, for foreclosure of the various real and chattel mortgages. Leave was also granted to defendants to move to vacate or dissolve the preliminary injunction if the plaintiffs failed to comply with their monthly obligations under the mortgages. Defendants, while they did not counterclaim for foreclosure, did, however, move unsuccessfully on three occasions to dissolve the restraints because of alleged defaults on the part of the plaintiffs.
In addition to the two counts mentioned in the preceding paragraph, plaintiffs subsequently amended their complaint to include a third count wherein it was alleged that the sale of the York Motel for $3,000,000 involved an illegal attempt by the defendants to evade and circumvent the usury laws of this State; see N.J.S.A. 31:1-1 et seq. and the federal income tax laws. Defendants denied the illegality charged by the plaintiffs.
The instant motion by the defendants has been made after a three-week plenary trial on the merits. After considering the papers filed by the parties, together with the oral argument, I find as a fact that defendants have established the existence of substantial defaults in payment on the part of the plaintiffs mortgagors.
Although the express terms of the mortgages held by the defendants in this case provide that the mortgagee may take possession of the mortgaged premises upon default "or have a receiver appointed forthwith without proof of the depreciation of the value of the premises," this provision does not give the mortgagee an absolute right to have the court appoint a receiver. Thus, as the court observed in Tucker v. Nabo Construction Corp., 108 N.J. Eq. 449, 450-51 (Ch. 1931), such covenants are "not binding on the court, and does not entitle the mortgagee to the appointment of a receiver as a matter of right and without regard to the other circumstances of the case. * * * The consent of parties, especially when given several years in advance, cannot operate to move the court to exercise such powers contrary to settled practice."
*112 The real problem in this case is whether or not this court should, or indeed can, appoint a receiver in the absence of an express foreclosure or some other similar affirmative plenary action. In my opinion, the peculiar circumstances of this case, in their present posture, justify an affirmative answer to the posited query.
The primary authority relied upon by the defendants in support of the extraordinary relief sought is two New Jersey cases which are inapposite to the matter before the court. The first case, Peterpaul v. Torp, 122 N.J.L. 476 (E. & A. 1939), involved a suit for rent due under a lease where the court stated:
"The cases are legion which hold that upon the default in a mortgage, the mortgagee is entitled to possession and that the mortgagee may take actual possession, through peaceable means or by ejectment proceedings in a court of law, or constructive possession by the appointment of a rent receiver, or the attornment of a tenant in possession." Supra, at p. 480.
The Peterpaul case did not involve the appointment of a receiver but an attornment by a tenant who was in possession. Additionally, while an attornment did in fact occur in the case, it followed a foreclosure by the new landlord. In short, the applicability of the Peterpaul case to the case at hand is, at best, debatable.
The defendants' other primary authority, viz., Dorman v. Fisher, 31 N.J. 13 (1959), is distinguishable on the ground that the record titleholder in that case had in fact obtained possession through the medium of a plenary action for ejectment. 31 N.J., at p. 14. Furthermore, the various secondary authorities cited by the defendants, besides being somewhat equivocal, are distinguishable. See 37 Am. Jur., Mortgages § 944 (1941); 59 C.J.S. Mortgages § 340, pp. 468-469 (1949).
On the other hand, the cases advanced by the plaintiffs, while enlightening, are not conclusive on the ultimate substantive issue. Thus, while the court in Twenty Nassau *113 Street Holding Co. v. Twenty Nassau Street, Inc., 112 N.J. Eq. 213 (E. & A. 1932), did state that the plaintiffs' application for a rent receiver was premature since no foreclosure action had begun, 112 N.J. Eq., at p. 217, the facts in that case are distinguishable from those in the present action. More specifically, the property for which a receiver of rent was sought in Twenty Nassau Street Holding Co. was already in the hands of a receiver and the very dispute giving rise to the litigation involved the receiver's petition to sell the insolvent's assets free and clear of certain liens. Without further distillation of the similarities and differences between that case and the case sub judice, I think it sufficient to state that no "exceptional circumstances" were present in Twenty Nassau which would or could have justified the granting of the relief sought.
The other cases relied upon by the plaintiffs also merit analysis. In Leddel's Executor v. Starr, 19 N.J. Eq. 159 (Ch. 1868), a complaint was filed by an executor for settlement of a decedent's estate and for directions as to the disposition of certain funds in his hands which were claimed by the administrator of the decedent's estate. Certain defendants in the cause moved to remove the executor and appoint a receiver. The court, in holding that a receiver is generally appointed when an affirmative action is taken, i.e., a bill filed for the appointment of a receiver, stated at page 164 that:
"* * * I find no case in which a receiver has been appointed, as against a complainant, upon the application of a defendant. * * * I find no precedent anywhere, to sustain such practice. The whole theory upon which relief is granted in equity, is against such practice. No positive relief is ever granted to a defendant, except on a cross-bill; and no relief, except it be founded on allegations in the bill, or other pleadings in the cause."
While Leddel's Executor appears, on the surface, to sustain the plaintiffs' position in the instant case, there are a number of other factors to be considered. First, the decision is ninety-four years old and the facts in the case do not disclose *114 any exceptional circumstances or compelling reasons for granting the relief sought, i.e., the removal of the executor and the appointment of a receiver. While the Chancellor in Leddel's Executor found no precedent for the extraordinary relief sought, that is not the same as saying that there is none at all. The theory of equity jurisprudence which was extant ninety-four years ago is not, in my opinion, the same as that which exists today. Equity has grown with age. Remedies have been created to rectify wrongs. Equity today is no longer hesitant in venturing beyond the safety of the confines of well-established property and contract concepts which courts many years ago felt bound to dogmatically follow.
Leddel's Executor has not been cited as authority for the instant proposition in the many years which have followed that case. Therefore, while this decision appears initially to be conclusive authority for the plaintiffs' position, lending some aura of veneration to a finding in their favor, I do not think that this court is precluded from adopting another course or result.
There is no question that the clear tenor and import of our cases and the authorities cited from other jurisdictions manifestly compel the conclusion that a mortgagee may not, as a general rule, bring an action to have a receiver of rents appointed following a default unless that action is ancillary to some other action concerning the rights and obligations of the parties. See, e.g., Detroit Fidelity & Security Co. v. King, 264 Mich. 91, 249 N.W. 477 (Sup. Ct. 1933); Massachusetts Mut. Life Ins. Co. v. Reutter, 268 Mich. 175, 255 N.W. 754, 755 (Mich. Sup. Ct. 1934); 3 Jones, Mortgages, sec. 1940, at p. 424 (8th ed. 1928). The inquiry, however, is not whether the mortgagee has instituted some other appropriate action since such a view fails to take into account the possibility of "exceptional circumstances." Rather, the question is whether or not it can be said on a close and searching appraisal that the application for the appointment of the receiver in the case had no recognizable connection with an *115 action already instituted between the parties in which the basic factors upon which the relief is sought have, for all practical purposes, been put in issue. If such a connection is found, the appointment of a receiver would be proper.
This is a case in which the parties have been involved over a considerable period of time. Many preliminary orders have been made dealing with the obligations imposed upon the plaintiffs in this case; for example, the obligations concerning the requirement of payments which the plaintiffs had to make in order to support the granting of the interlocutory injunction in January 1962. There have been orders covering many other facets of this case. In my opinion, exceptional circumstances do exist which justify the approach which is now being taken.
The plaintiffs instituted this action to be relieved of the limited partnerships' obligation to make further payments under various chattel mortgages and real mortgages, and for other incidental relief based upon an allegation that the transactions involved were usurious. The defendants, of course, answered and denied these allegations. Discovery, which can be described as being complete and all-inclusive in every sense, and a very lengthy plenary trial followed. The matter is ready for decision.
Throughout the course of the litigation, many orders and directives were issued concerning different aspects of this action, which, in many instances, directly concerned the payment of the mortgage obligation and the alleged defaults by the mortgagor. Time and time again applications were made by the defendants, considered by the court, and further orders made with reference to moneys due, and payments which were to be made pending the litigation. Some of the orders were complied with, others were not.
The course along which the suit has proceeded is practically synonymous with the conclusion that the present application is tantamount to an affirmative action on the part of the defendants. In my opinion, a court should not be naive. The realities of the situation would be totally ignored if this *116 court were to conclude that there is no valid and reasonable connection between the defendants' position in the main action and the instant motion which we are considering today.
Stated differently, I consider it extremely important to take into account the totality of all the circumstances which form the present context. For practical purposes, let us say that many of the plaintiffs' possibly meritorious defenses to any foreclosure action have been presented or set forth in the plenary action between the litigants. This fact alone is not conclusive.
I agree with the plaintiffs' position that the application for a receiver must be ancillary to some other affirmative action. Even then the appointment may only be justified under cautiously circumscribed rules. It is my conclusion, however, after considering all of the relevant factors in their totality, that the defendants are entitled to the appointment of a receiver. Accordingly, that will be the order of the court.